UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JOSE FRANCISCO RUIZ-SANCHEZ,

                       Petitioner,

v.

UNITED STATES OF AMERICA.

Criminal Action No. 3:10–CR–308-25
Civil Action No. 3:11–CV–826

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Petitioner Jose Francisco Ruiz-Sanchez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 704). Petitioner seeks relief based on the ineffective assistance of his trial counsel. For the reasons stated below, the Court DENIES the Motion and GRANTS a Certificate of Appealability.

### I.     FACTUAL AND PROCEDURAL HISTORY

Petitioner, along with more than two-dozen co-defendants, was originally indicted on November 10, 2010 for Conspiracy to Produce and Transfer False Identification Documents and Possess a Document-Making Implement (Count One) and Money Laundering Conspiracy (Count Two). First, Second, and Third Superseding Indictments were issued on December 14, 2010, February 23, 2011, and February 24, 2011, respectively. The Third Superseding Indictment charged Petitioner with Racketeering Conspiracy (Count One); Conspiracy to Possess, Produce and Transfer False Identification Documents and Possess a Document-Making Implement (Count Eleven); and Money Laundering Conspiracy (Count Twelve). On March 28, 2011, Petitioner pled guilty to Count

1

One of the Third Superseding Indictment, charging him with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).

The charges stem from Petitioner's involvement with the Fraudulent Documents Enterprise ("FDE"), a criminal organization with cells operating throughout the United States that engaged in various criminal acts, including trafficking in false identification documents and money laundering. Statement of Facts ¶ 1, ECF No. 206. Beginning prior to January 2010, Petitioner was a member of the FDE, and beginning prior to September 2010, he supervised "runners" operating in an FDE cell in Cincinnati, Ohio. *Id.* at ¶ 2. The "runners" identified illegal alien clients who wanted to obtain false identification documents and relayed the clients' identifying information and photographs to Petitioner. *Id.* Petitioner created fraudulent documents for these clients, which the runners in turn provided to the clients in exchange for United States currency. *Id.* Petitioner kept a portion of that money and gave the rest to a manager of the cell. *Id.*

In conjunction with his Plea Agreement, Petitioner acknowledged that he joined the conspiracy willfully and with full knowledge of FDE's unlawful purposes. *Id.* at ¶ 3. Petitioner performed several overt acts in furtherance of the conspiracy. *Id.* Petitioner stipulated that he knowingly agreed to conduct and participate in the conduct of the organization, which involved engaging in a pattern of racketeering activity involving multiple acts in violation of the following provisions of federal law:

   a. 18 U.S.C. section 1028(a) (fraud and related activity in connection with identification documents);
   b. 18 U.S.C. section 1028(f) (attempt and conspiracy to violate section 1028(a));
   c. 18 U.S.C. section 1956(a)(l) and 1956(a)(2) (money laundering); and

  d. 18 U.S.C. section 1956(h) (money laundering conspiracy).

*See id.*; Third Superseding Indictment 15.

  Prior to sentencing, the United States Probation Officer prepared a Presentence Report ("PSR") for Petitioner. The PSR calculated Petitioner's offense level as 22, consisting of a base offense level of 11 for Conspiracy to Possess, Produce, and Transfer False Identification Documents, a 9 level increase because the offense involved more than 100 documents, and a 2 level increase on the ground that the Defendant was convicted under 18 U.S.C. § 1956, the statute penalizing money laundering. Petitioner's offense level was further enhanced two levels based on his aggravating role as a supervisor of the criminal activity, resulting in an offense level of 24. *See* U.S.S.G. § 3B1.1(c). Petitioner received a three-level reduction for his acceptance of responsibility, resulting in a total offense level of 21. With a criminal history category of I, Petitioner's sentencing guideline range was calculated as 37 to 46 months. Neither side objected to these guideline calculations, though the United States moved for an upward variance. At the sentencing hearing on June 27, 2011, the Court granted the United States' request for an upward variance and varied the offense level up two levels to 23, resulting in a sentencing guideline range of 46 to 57 months. The Court sentenced Petitioner to 48 months' imprisonment on June 27, 2011.

  Petitioner filed this § 2255 motion on December 12, 2011, claiming ineffective assistance of counsel based on his attorney's failure to object to the two level enhancement pursuant to U.S.S.G. §2S1.1(b)(2)(B) for a conviction under 18 U.S.C. § 1956. Petitioner argues that this enhancement was inapplicable because he was not actually convicted of violating 18 U.S.C. § 1956, and thus, his counsel was ineffective in failing to object. On January 30, 2012, the United States filed a response to Petitioner's § 2255 motion arguing

3

that Petitioner cannot establish that his attorney's representation fellow below an objective standard of reasonableness. Petitioner has not filed a reply brief in further support of his § 2255 motion. This matter is now ripe for review.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). The petitioner has the burden of proof to demonstrate that there has been a constitutional violation by a preponderance of the evidence. *See United States v. Cronic*, 466 U.S. 648, 658 (1984); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

A petitioner may not assert claims on collateral review that he could have raised on direct appeal but failed to, *Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976); *United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009), unless he shows cause for the procedural default and actual prejudice or that a miscarriage of justice would result. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982); *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999); *United States v. Landrum*, 93 F.3d 122, 124–25 (4th Cir. 1996). To show that a denial of the § 2255 motion would result in a miscarriage of justice, the petitioner must show actual innocence by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 493.

The ineffective assistance of counsel constitutes cause for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel claims under the Sixth Amendment to the Constitution are examined under the two-prong test set forth

4

in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must prove both prongs to succeed, and if a petitioner fails to prove either prong, a court must deny the petitioner's motion. *Strickland*, 466 U.S. at 687. To succeed under *Strickland*, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Id.* at 687. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991).

The first prong of the *Strickland* test requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010)(quoting *Strickland*, 466 U.S. at 688); *see also Mueller v. Angelone*, 181 F.3d 557, 579 (4th Cir. 1999). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The determination of "reasonableness" must be evaluated "'from counsel's perspective at the time of the alleged error and in light of all the circumstances . . .'" *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004)(quoting *Kimmel v. Morrison*, 477 U.S. 365, 381 (1986)).

The second prong of *Strickland* requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Id.* at 687. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

## III. DISCUSSION

Petitioner's sole claim for relief asserts that his trial counsel was ineffective for failing to object to the two-level enhancement to his offense level pursuant to U.S.S.G. § 2S1.1(b)(2) ("§ 2S1.1(b)(2) enhancement") for a Money Laundering conviction under 18 U.S.C. § 1956. Petitioner argues that the § 2S1.1(b)(2) enhancement applies only to convictions under 18 U.S.C. § 1956, and that while he acknowledged in the Statement of Facts submitted with his plea that he knowingly agreed to conduct and participate in activities that violated § 1956, he was not actually convicted for a violation of § 1956. *See* Statement of Facts ¶ 3. Petitioner therefore asserts that the PSR erroneously calculated the guidelines as though he had been convicted of a § 1956 violation, and that his counsel performed deficiently by failing to object to this 2 level increase. Petitioner further argues that he was prejudiced as a result because there is a reasonable probability that the outcome of his sentencing hearing would have been different had his counsel objected.

In support of his assertion that he was prejudiced by his attorney's failure to object, Petitioner relies on subsequent rulings in this matter wherein the Court sustained objections made by two of his co-defendants, who argued that the § 2S1.1(b)(2) enhancement was inapplicable because they were not actually convicted of violating § 1956. These co-defendants cited the text of U.S.S.G. §§ 2S1.1(b)(2) and 1B1.3, as well as a Second Circuit case, *United States v. Rosse*, 320 F.3d 170 (2nd Cir. 2003), which found there

must be an actual §1956 conviction in order for the § 2S1.1(b)(2) enhancement to apply.[1] *See U.S. v. Eulalio Alcantra Cruz,* No. 3:10-CR-308-15, Sent'g Tr. 4:4-5:25. These co-defendants argued that, pursuant to § 1B1.3, the § 2S1.1(b)(2) enhancement should not apply where the defendant has merely stipulated to activity that is described in § 1956 or is convicted of a related offense. *See id.* Based on the foregoing, Petitioner argues that his counsel's failure to similarly object led to an incorrect calculation of the guideline range.

In response, the Government argues that the failure of Petitioner's counsel to object to the application of the § 2S1.1(b)(2) enhancement does not constitute deficient performance, and therefore, Petitioner cannot establish ineffective assistance of counsel. If the Court finds that counsel's representation fell below an objective standard of reasonableness, the Government concedes that the prejudice prong has been satisfied. Nevertheless, the Government argues that counsel's actions fell within the wide range of reasonable professional assistance, pointing first to the fact that Petitioner stipulated in the Statement of Facts that, among other illegal racketeering acts, he committed money laundering acts in violation of 18 U.S.C. §§ 1956(a)(1), (a)(2) and (h). *See* Statement of Facts ¶ 3. The Government argues that, under the guidelines, each underlying offense should be treated as if contained in a separate count of conviction, and therefore, the PSR properly treated each of the § 1956 money laundering acts as a separate conviction and applied the § 2S1.1(b)(2) enhancement. *See* U.S.S.G. § 2E1.1 cmt. n.1 ("Where there is more

---

[1] § 2S1.1(b)(2)(B) provides that "[i]f the defendant was convicted under 18 U.S.C. § 1956, increase by 2 levels." § 1B1.3 Application Note 6 clarifies that "[a] particular guideline . . . may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute. For example, in §2S1.1 . . . subsection (b)(2)(B) applies if the defendant 'was convicted under 18 U.S.C. § 1956'. Unless such an express direction is included, conviction under the statute is not required." § 1B1.3 cmt. n.6. Note 6 expressly states that § 2S1.1(b)(2)(B) "is applicable only if the defendant is convicted under 18 U.S.C. § 1956." *Id.*

than one underlying offense, treat each underlying offense as if contained in a separate count of conviction for the purposes of subsection (a)(2).")

The Government further argues that the failure of Petitioner's counsel to object to the enhancement does not constitute deficient performance because no controlling authority existed in the Fourth Circuit at the time. The Government also asserts that Petitioner's counsel did not perform deficiently by failing to anticipate that this objection would ultimately be successful because the Court sustained the objection for Petitioner's co-defendants several weeks after Petitioner's sentencing, noted that the objection presented a close issue, and based the ruling on a Second Circuit case. Furthermore, the Government maintains that the Fourth Circuit "does not mandate research into other circuit's [sic] law in order to comport with the wide latitude given counsel under *Strickland*." *United States v. Gregory*, 30 Fed. Appx. 55, 57 (4th Cir. 2002)(unpublished)). The Government thus argues that counsel's performance is not deficient under *Strickland*.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Smith v. Murray*, 477 U.S. 527, 535 (1986)(internal citations omitted). However, "[w]hile courts are properly deferential to attorneys' discretion, failure to raise an objection to *a clear and indisputable error* in the PSR is not within the broad range of performance that can be deemed reasonable." *Smith v. United States*, 871 F. Supp. 251, 254-55 (E.D. Va. 1994)(finding that the performance of petitioner's counsel was objectively unreasonable because there was no

8

ambiguity that petitioner's misdemeanor conviction for making a false report to a police officer could not be included in his criminal history category)(internal citations omitted)(emphasis added). *See also United States v. Lewis*, 477 Fed. Appx. 79, 82 (4th Cir. 2012)(finding that a petitioner's counsel was clearly deficient under *Strickland* when they gave the petitioner plainly false advice as to whether or not he faced a career offender enhancement and mandatory life sentence, and the misinformation could have been corrected by a simple reading and application of the federal statutes)(unpublished).

In this case, the application of the § 2S1.1(b)(2)(B) enhancement is not the kind of clear and indisputable error in Petitioner's PSR for which a failure to object is outside of the wide range of performance that is considered reasonable under *Strickland*, despite the fact that the Court later sustained such an objection. On the one hand, the plain language of § 2S1.1(b)(2)(B) provides that the offense level is to be increased by two levels "[i]f the defendant was convicted under 18 U.S.C. § 1956," and the commentary to § 1B1.3 of the guidelines explicitly states that the § 2S1.1(b)(2)(B) enhancement only applies if the defendant was actually convicted under 18 U.S.C. § 1956. *See* § 1B1.3 cmt. n.6. Therefore, the language of the enhancement and the guidelines commentary establish that this enhancement does not apply unless there is a conviction under § 1956. Furthermore, despite the lack of Fourth Circuit authority on point at the time of Petitioner's sentencing, the Second Circuit had already touched upon this issue in *Rosse*, and this persuasive authority was available to Petitioner's counsel, as it was to his co-defendants.

On the other hand, § 1B1.2 of the guidelines, which lays out generally applicable principles, provides that "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional

9

offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." § 1B1.2(c). Petitioner's Plea Agreement incorporates the Statement of Facts, which, as noted above, includes an acknowledgement that he knowingly agreed to conduct and participate in FDE's conduct, including acts in violation of 18 U.S.C. §§ 1956(a)(1), (a)(2), and (h). *See* Plea Agreement ¶ 3 (ECF No. 205)*;* Statement of Facts ¶ 3. Although this Court ultimately found that the application of the § 2S1.1(b)(2)(B) enhancement is improper without a conviction, the Court cannot conclude that it was objectively unreasonable for Petitioner's counsel to fail to object in light of the language in § 1B1.2(c) and the apparent absence of any controlling Fourth Circuit authority at the time. While Petitioner might have received a lesser sentence if his counsel had made this objection, "that failure does not render [counsel] constitutionally deficient." *Gregory v. United States*, 109 F.Supp. 2d 441, 459 (E.D.Va. 2000)(holding that while the result of counsel's failure to request a special verdict may seem unfair, it did not constitute ineffective assistance of counsel, as "[a]n attorney's performance is not constitutionally deficient if it is merely below-average"), *aff'd United States v. Gregory*, 30 Fed. Appx. 55 (4th Cir. 2002)(unpublished). For these reasons, the Court DENIES Petitioner's motion.

## IV. CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a Certificate of Appealability. *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings. A Certificate of Appealability should issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Specifically, the petitioner must show "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). The Supreme Court has held "a claim can be debatable even though every jurist of reason might agree . . . that petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). Upon due consideration, the Court GRANTS a Certificate of Appealability.

## V. CONCLUSION

For the reasons provided above, Petitioner's § 2255 Motion is DENIED. A Certificate of Appealability is GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to Petitioner and all counsel of record.

An appropriate order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this ___9th___ day of September 2013